**In re BABCOCK DAIRY CO. OF OHIO, INC., Debtor(s).**

**John J. HUNTER, Trustee, Plaintiff,**

**v.**

**Donna BABCOCK, Defendant.**

**Bankruptcy No. 85–0227.**
**Related Case No. 84–00577.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 9, 1986.

Thomas J. Schank, Toledo, Ohio, for plaintiff.

John N. MacKay, Kevin H. Graham, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court for Trial on the Complaint To Avoid Preferential Transfers filed by the Plaintiff in the above entitled action. The parties have agreed that the disposition of this case is, by operation of law, dependent upon the outcome in *Hunter v. Babcock (In re Babcock Dairy Co. of Ohio, Inc.)* 70 B.R. 657 (Bkcy.N.D.Ohio 1986). Pursuant to that agreement, the Court consolidated, for purposes of Trial this case with Case No. 85–0225. At Trial, the parties had the opportunity to present any evidence and arguments they wished the Court to consider relative to the merits of this case. The Court has reviewed the evidence, the arguments, and the entire record in this action. Based upon that review and for the following reasons the Court finds that judgment should be entered for the Defendant.

## FACTS

Although this case proceeded to Trial, the majority of facts do not appear to be in serious dispute. The Debtor in the underlying bankruptcy proceeding is an Ohio corporation which, prior to the filing of the Order of Relief, was engaged in the retail dairy business. The Plaintiff in this case is the Trustee in that Chapter 7 proceeding. The Defendant in this case is the deceased wife of Wayne H. Babcock. Prior to September 8, 1980, Wayne H. Babcock (hereinafter Babcock) was the principal officer of the Debtor's business. Although Babcock was also the principal operator of and shareholder in the Debtor-corporation, it appears that other immediate family members, including the Defendant, were minority shareholders.

At some time during 1953, Robert B. Koder (hereinafter Koder) began his employment with the Debtor. Although it appears he started as a general employee, he eventually became involved in the management of the business. In 1970, he became the Executive Vice-President of the corporation. At some time later he became the General Manager. The evidence indicates that during his employment with the Debtor and as a result of his progression in the company, Koder became a close personal friend of Babcock.

At some time during the latter part of the 1970's, Babcock initiated efforts to sell the business. Ultimately, an agreement was struck between Babcock and Koder, whereby Koder would become the sole independent owner of the Debtor. This agreement was executed on or about September 8, 1980. As a part of that agreement, Koder became a minority shareholder in the corporation. The remaining shareholders, including Babcock, agreed to sell their shares of stock to the corporation. The entire purchase price for these shares was approximately $1,090,500.00. In return for these shares the Debtor agreed to pay $200,000.00 to the sellers at the time of

closing. In addition, Koder, as an agent of the Debtor, executed promissory notes to the sellers for their requisite share of the unpaid purchase price. These notes were to be paid by the Debtor in monthly installments for a period of 120 months. As security for these notes the transferred shares of the corporation were placed in escrow pending completion of the promissory obligations. The provisions of the escrow arrangement provided for the reissuance of the shares to the sellers in the event of the Debtor's default on the notes. The record indicates that the Debtor made monthly payments to the sellers up until the time the Order For Relief was entered by this Court.

In addition to providing for a change in the Debtor's ownership, the contract of sale included certain terms regarding Babcock's continued participation in the corporation's affairs. Under these additional terms, Babcock became an employee of the Debtor corporation. Although the nature and title of his position was never clearly defined, it appears that this "employment contract" required him to perform specific functions. Included in these functions was the retention of Babcock's position as Chairman of the Debtor's Board of Directors. While it appears that Babcock was willing to fulfill any other tasks which might be assigned to him, the evidence reflects that Koder did not expect to strictly enforce Babcock's responsibilities under the employment agreement. As compensation for his "services", Babcock was paid a salary and was provided with substantially the same personal benefits as he enjoyed during his ownership of the corporation. Additionally, he was allowed to occupy his former office space and could maintain the same number of hours as he observed prior to the sale.

The evidence reflects that Babcock's activities under this contract consisted primarily of reviewing the Company's accounts receivable, general public relations work, and solicitation of business for the Debtor. It also appears that Babcock, during his working hours, engaged in a variety of personal activities which were unrelated to the Debtor's business. It does not appear that those "duties" undertaken by Babcock for the business consumed a considerable amount of the time which he spent on the business premises. In addition, it also does not appear that Babcock's position on the Board of Directors entailed any significant degree of involvement with the Debtor's affairs. In that regard, the evidence reflects that Babcock was elected to the Board of Directors at the shareholder meetings which were conducted in 1980 and 1981. However, Babcock was not elected as a director in any subsequent year. There was some testimony which suggested that these "shareholder meetings" and "shareholder elections" were carried out in form only, and that the documents reflecting these meetings were prepared solely for the purpose of satisfying state statutory requirements.

A review of the evidence reflects that Babcock was afforded many liberties regarding his ability to involve himself in the Company's business. However, it also reflects that he had little or no authority to establish or enforce corporate policy. Specifically, the testimony indicates that he could not sign the Debtor's checks, could not hire or dismiss employees, and could not issue directives involving any significant corporate decisions. The evidence reflects that the employees understood the ramifications of the sale of the business to Koder, and that they regarded Koder as the person to whom they answered. While it appears that the employees afforded Babcock a considerable degree of respect as the result of his prior ownership, it is evident that this respect did not equate itself with authority over the Debtor's business.

On April 11, 1984, an involuntary Chapter 7 Petition was filed against the Debtor. On April 17, 1984, the Debtor consented to the entry of an Order of Relief. Shortly thereafter, this Court appointed the Trustee for the purpose of liquidating the Debtor's estate. In an effort to collect assets for the estate, the Trustee filed the above entitled adversary action. In this case, the

Trustee alleges that the monthly payments made to the Defendant by the Debtor on the promissory notes were preferential transfers under the provisions of 11 U.S.C. Section 547(b). Specifically, it is alleged that Babcock was an insider of the Debtor under the provisions of 11 U.S.C. § 101(25). If he is found to be an insider, then the Defendant in this case will, under 11 U.S.C. § 101(25)(B)(vi), also be an insider. As a result of this insider standing, it is alleged that the payments made by the Debtor to the Defendant on the promissory notes during the one year period prior to the filing of the petition are subject to avoidance under 11 U.S.C. § 547(b). It should be noted that the Defendant has voluntarily surrendered to the Trustee all amounts which were paid by the Debtor during the ninety day period which preceded the filing of the petition. The purpose of this action is solely to return to the estate those amounts which were paid to the Defendant during the one year pre-petition period, exclusive of the ninety day period.

In contending that Babcock was an insider of the Debtor, the Trustee asserts that Babcock was a director of the Debtor at the time the petition was filed. He also alleges that Babcock was a person who exercised sufficient authority and control over the Debtor so as to be found to be an insider under 11 U.S.C. § 101(25)(B)(iii). Finally, he alleges that because of the close personal relationship which existed between Babcock and Koder, Koder should be found to be a relative of Babcock for purposes of this proceeding. The Defendant summarily opposes the Trustee's contentions, arguing that Babcock was merely an employee of the Debtor, and that all meaningful control of the Debtor's affairs was transferred in the sale to Koder. It should be noted that the parties to this action have agreed that all other elements of an action under 11 U.S.C. § 547(b) have been satisfied, and that the sole remaining question is whether or not Babcock was an insider of the Debtor at the time the petition was filed.

## LAW

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, the provisions of 11 U.S.C. § 101(25) stated in pertinent part:

(25) "insider" includes—

(B) if the debtor is a corporation—

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(vi) relative of a general partner, director, officer, or person in control of the debtor;

The pre-amendment version of 11 U.S.C. § 547(b) stated in pertinent part:

(b) ... the trustee may avoid any transfer of property of the debtor ...

(1) to or for the benefit of the creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title;

The pre-amendment versions of these statutes are applicable in this adversary proceeding, inasmuch as the underlying Chapter 7 case was filed prior to the effective date of the amendments. *See,* P.L. 98–353 § 553(a).

Under these sections, a trustee may avoid the transfer of an interest of the debtor in property which was made be-

tween ninety days and one year preceeding the filing of the debtor's petition if 1) the transfer was made to a creditor on account of an antecedent debt, 2) the transfer was made while the debtor was insolvent, 3) the creditor was an insider of the debtor within the contemplation of 11 U.S.C. § 101(25), 4) the insider had reasonable cause to believe the debtor was insolvent at the time of the transfer, and 5) the transfer enabled the creditor to receive more than would have been received in a Chapter 7 liquidation had the transfer not been made. *Hunter v. Pool Pals Manufacturing, Inc. (In re Benson)*, 57 B.R. 226 (Bkcy.N.D.Ohio 1986).

■ It is well established that the term insider is not necessarily confined to those entities set forth in 11 U.S.C. § 101(25). *Hunter v. Pool Pals Manufacturing, Inc.*, supra. Rather, an insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny. *Lingley v. Stuart Shaines, Inc. (In re Acme-Dunham Incorporated)*, 50 B.R. 734 (D.Me.1985). However, under the provisions of 11 U.S.C. § 101(25), any person that is a director of a corporate debtor, or any person which exercises control of a corporate debtor is automatically considered to be an insider under 11 U.S.C. § 101(25)(B)(iii). It does not appear that a standard has been established for determining the degree to which a person must control a debtor before he is considered to be an insider. However, it does appear that the person or entity must have a least a controlling interest in the debtor, *Louisianan Industrial Coatings, Inc. v. Pertuit (In re Louisiana Industrial Coatings, Inc.)* 31 B.R. 688 (Bkcy.E.D.La.1983), or that the person must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets. *See, Bergquist v. First National Bank of St. Paul (In re American Lumber Co.)*, 5 B.R. 470 (D.Minn.1980). It is insufficient that the alleged insider had only a superior bargaining position in a contractual relationship with the Debtor. *Schick Oil & Gas, Inc. v. Federal Deposit Insurance Corp. (In re Schick Oil & Gas, Inc.)*, 35 B.R. 282 (Bkcy. W.D.Okla.1983).

■ At trial, the Court dismissed the Trustee's insider allegations which were founded upon the relationship between Babcock and Koder. The provisions of 11 U.S.C. § 101(25)(B)(vi) clearly state that to be an insider, the person must be a relative of a director or officer of the debtor. There was no evidence presented at trial which indicated that Koder was, within three degrees, a member of the Babcock family. Furthermore, the Trustee has not presented this Court with any persuasive authority which would allow a close personal friendship to be characterized as a family relationship for purposes of 11 U.S.C. § 101(25)(B)(vi). Although the Trustee has argued that the decision in *Loftis v. Minar (Matter of Montanino)*, 15 B.R. 307 (Bkcy. D.N.J.1981) permits such an interpretation, the facts of that case are sufficiently divergent from those in the present action so as to render the decision in that case inapplicable. Accordingly, for the foregoing reasons, the Trustee was not entitled to prevail on that assertion.

With regard to the contention that Babcock was a director of the corporation, a review of the evidence reflects that at the time the business was sold to Koder, Babcock was contractually entitled to be the Chairman of the Debtor's Board of Directors. The minutes of the meetings of shareholders for 1980 and 1981 indicate that Babcock was elected to that position for those respective years. However, a review of the minutes for the meetings which were "held" in 1982 and 1983 finds that Babcock was not elected to a position on the Board. Furthermore, a review of the evidence presented at trial finds nothing which suggests that Babcock served in any capacity which is customarily associated with either a director or an officer of a corporation.

The provisions of Ohio Revised Code § 1701.57 state in pertinent part:

(A) Unless the articles or the regulations provide for a different term (which

may not exceed three years from the date of his election and until his successor is elected), each director shall hold office until the next annual meeting of the shareholders and until his successor is elected, or until his earlier resignation, removal from office, or death.

These provisions limit the terms of directors to one year from their time of initial election. Based upon the operation of this statute, it would appear that Babcock's term as Chairman of the Board of Directors expired as of the close of the 1982 shareholders meeting, notwithstanding the provision of his employment contract. Furthermore, even if the statute did not, in and of itself, terminate Babcock's reign as Chairman of the Board, the corporate records reflect that he did not hold that office subsequent to the 1982 election. As a result, this Court cannot conclude that he was a director of the corporation at the time the petition was filed. In addition, the evidence does not demonstrate that Babcock performed any of the functions which might be expected of either an officer or director of the corporation. Accordingly, it must also be concluded that the Trustee is not entitled to a *de facto* finding that Babcock served in those capacities. In light of those conclusions, the Trustee cannot prevail in his contention that Babcock was, under 11 U.S.C. § 101(25)(B)(i) or (ii), an insider of the corporation.

Finally, the Court must consider the question of whether or not Babcock was a person in control of the debtor. A review of the evidence finds that he was employed by the Debtor under a contract of employment. Although the contract specifically enumerates the duties to be performed by Babcock, the testimony indicated that he was not expected to totally fulfill any duties which might be assigned. The testimony also indicated that he reviewed the Debtor's accounts receiveable and conducted work that related to the Debtor's customers. This evidence suggests that Babcock served more in the capacity as an advisor to the Debtor than as a person with specifically assigned tasks. Such a posi-

tion would naturally result from the fact that Babcock was familiar with the Debtor's customers and could be of benefit to the company in that regard. However, it does not appear that this position enabled Babcock to make any dispositive corporate decisions. The evidence indicates that the employees understood Koder to be both the owner of the business and the person to whom they would answer regarding business decisions. Specifically, the testimony indicated that Koder's approval was required for payments out of the corporate accounts, that Koder dictated corporate policy as to purchases of capital, and that Koder was the final authority over matters involving employees. There is no evidence which indicates that Babcock could, subsequent to the sale, command authority over any corporate affair.

In the absence of evidence which demonstrates Babcock's participation in the corporation's management, this Court cannot find that he had any meaningful control of the Debtor. The evidence reflects that he had no authority to dispose of corporate assets, nor did he prevail in any decisions regarding the operation of the Debtor's business. The evidence clearly indicates Babcock was merely an employee of the Debtor who was the beneficiary of a favorable employment contract. With the exception of offering advice to the company regarding its accounts receiveable and exercising his ability to solicit customers for the business, the evidence indicates that Babcock had no meaningful control over any corporate affair. Without such control, this Court cannot conclude that Babcock was an insider within the contemplation of 11 U.S.C. § 101(25)(B)(iii). Since he cannot be found to be an insider, the amounts paid to him during the nine month period prior to the ninety days preceding the filing of the petition are not recoverable under 11 U.S.C. § 547(b). Furthermore, since Babcock cannot be found to be an insider, the Defendant in this case cannot, under 11 U.S.C. § 101(25)(B)(iv), be considered as an insider of the Debtor. Without such standing, the amounts paid by the Debtor to the

691

Defendant during the nine months preceding the ninety day pre-petition period are not recoverable under 11 U.S.C. § 547(b). Therefore, it must be concluded that the Complaint in this case should be dismissed.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Complaint in this case be, and is hereby, DISMISSED.