**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: JOHN GEORGE BROUMAS;
In Re: RUTH D. BROUMAS,
Debtors.

JAMES P. KOCH, Trustee,
Plaintiff-Appellee,                           No. 97-1182

v.

L. LAWTON ROGERS, III, d/b/a
Rogers Investments; ROGERS &
KILLEEN,
Defendants-Appellants.

In Re: JOHN GEORGE BROUMAS;
In Re: RUTH D. BROUMAS,
Debtors.

JAMES P. KOCH, Trustee,
Plaintiff-Appellant,                          No. 97-1183

v.

L. LAWTON ROGERS, III, d/b/a
Rogers Investments; ROGERS &
KILLEEN,
Defendants-Appellees.

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-95-2429-PJM, BK-91-40752, AP-93-23)

Argued: October 30, 1997

Decided: February 24, 1998

Before MURNAGHAN, HAMILTON, and LUTTIG,
Circuit Judges.

_____

Affirmed in part and reversed in part by unpublished per curiam opin-
ion.

_____

**COUNSEL**

**ARGUED:** Howard I. Rubin, GOLD & STANLEY, P.C., Alexan-
dria, Virginia, for Appellants. James P. Koch, Baltimore, Maryland,
for Appellee. **ON BRIEF:** Raymond R. Pring, Jr., GOLD & STAN-
LEY, P.C., Alexandria, Virginia, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This is an appeal from the United States District Court for the Dis-
trict of Maryland sitting as an appellate court in bankruptcy. For rea-
sons that follow, we affirm in part and reverse in part.

I.

John Broumas (Broumas) and his wife, Ruth Broumas (collectively
the Debtors), filed a voluntary petition under Chapter 7 of the Bank-

ruptcy Reform Act of 1978, 11 U.S.C. §§ 701-66, on February 15, 1991, in the United States District Court for the District of Maryland. At the time, Broumas was a banker with Madison National Bank of Virginia and a substantial shareholder in its parent company, James Madison, Limited.

James Koch was appointed as Chapter 7 Trustee of the Debtors' bankruptcy estate. In this position, Koch (the Trustee) initiated this adversary proceeding against L. Lawton Rogers (Rogers) and the law firm of which he was a partner, Rogers & Killeen (the Law Firm), (collectively the Defendants), to avoid and recover allegedly preferential or fraudulent transfers or both by the Debtors under Bankruptcy Code §§ 547(b) and 548(a). See 11 U.S.C. §§ 547(b) and 548.

Rogers and Broumas had a multifaceted relationship spanning fifteen years. For example, Rogers was Broumas' lawyer, and Broumas was Rogers' banker. The two were also friends and participated in several financial investments. The relationship between Rogers and Broumas was so close that Rogers allowed Broumas unlimited access to his accounts at Madison National Bank of Virginia as well as the Law Firm's account by giving Broumas signature authority over the accounts. Furthermore, over the years, Rogers and Broumas made loans to each other and pledged each other's credit.

The two ultimately participated in a wash-trade scheme to artificially inflate the price of James Madison, Ltd. stock, whereby Rogers placed orders to buy and sell the stock at Broumas' request. This scheme became the subject of an investigation by the United States Securities and Exchange Commission resulting in an injunction against Broumas barring him from purchasing or selling stock without a beneficial change in ownership. No charges were brought against Rogers.

Counts I and II of the Trustee's first amended complaint involved the Debtors' granting of two deeds of trust on their residence in favor of the Law Firm. The Debtors granted one to secure payment of a $50,000 flat fee they owed the Law Firm for legal representation in certain litigation known as the "Tantallon Litigation" (the $50,000 Deed of Trust). The Debtors granted the other to secure repayment of a $25,000 loan the Law Firm had made in favor of the Debtors (the

3

$25,000 Deed of Trust). When the Debtors transferred the $50,000 Deed of Trust and the $25,000 Deed of Trust (collectively the Deeds of Trust) to the Law Firm, there was sufficient equity in the residence to support them, even though the residence was encumbered by a first and a second deed of trust. In July 1991, however, when the holder of the first deed of trust initiated a foreclosure sale upon the residence, insufficient equity existed in the residence to support any recovery under the Deeds of Trust. In Count I of the first amended complaint, the Trustee alleged that the grants were avoidable and recoverable as preferential transfers under Bankruptcy Code § 547(b). The Trustee alternatively alleged in Count II that the grants were avoidable and recoverable as fraudulent transfers under Bankruptcy Code § 548(a). Both the Law Firm and Rogers were named as defendants in Counts I and II.

Counts III and IV named only Rogers as a defendant and involved three parcels of land located in Ocala, Florida. On August 15, 1990 Broumas deeded two of the three parcels to Rogers. Broumas did not own the third parcel outright, but held a first mortgage on it, which he assigned to Rogers prior to September 14, 1990. Rogers acquired title to the third parcel in a foreclosure sale and sold all three parcels for a total of $115,000. Count III alleged that the transfers were avoidable and recoverable as preferential transfers under Bankruptcy Code § 547(b), and Count IV alleged that they were avoidable and recoverable as fraudulent transfers under Bankruptcy Code § 548(a).

Counts V and VI named both the Law Firm and Rogers as defendants and involved certain cash transfers stemming from the wash-trade scheme between Rogers and Broumas to artificially inflate the value of stock in James Madison, Limited. Count V sought to avoid and recover the transfers under Bankruptcy Code§ 547(b), and Count VI sought to avoid and recover the transfers under Bankruptcy Code § 548(a).

The bankruptcy court conducted a bench trial on all of the claims. With respect to the Law Firm, the bankruptcy court only found it liable on Count II. On that count, the bankruptcy court held that the Debtors' grant of the $50,000 Deed of Trust was a fraudulent transfer within the meaning of Bankruptcy Code § 548 and ordered the Law Firm to pay the Trustee $50,000. The bankruptcy court only found

4

Rogers liable on Count III, and alternatively, on Count IV. The bankruptcy court ordered Rogers to pay the Trustee $115,000 under one count or the other.

All parties noted timely appeals to the United States District Court for the District of Maryland. On appeal before the district court, the Trustee only challenged the bankruptcy court's rulings in favor of the Defendants on Counts I and VI. The Law Firm challenged the bankruptcy court's ruling in favor of the Trustee on Count II, and Rogers challenged the bankruptcy court's rulings in favor of the Trustee on Counts III and IV.

The district court reversed the bankruptcy court's finding of no liability on Count I and ordered the Defendants jointly and severally liable for $75,000. The district court affirmed the bankruptcy court's finding of liability against the Law Firm on Count II, but also assessed liability against Rogers.[1] The district court affirmed the bankruptcy court's alternative findings of liability against Rogers on Counts III and IV, but also assessed the same liability against the Law Firm.[2] Finally, the district court affirmed the bankruptcy court's finding of no liability on Count VI with respect to Rogers and the Law Firm.

All parties noted timely appeals of the district court's final order to this court. On appeal before us, Rogers and the Law Firm appeal the district court's adverse rulings on Counts I through IV. In his cross-appeal, the Trustee appeals the district court's affirmance of the bankruptcy court's finding of no liability against the Defendants on Count VI.

II.

We apply the same standard of review as the district court applied to the bankruptcy court's decision. Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. See In re

_____

[1] The Trustee did not appeal the bankruptcy court's finding of no liability on Count II with respect to Rogers.

[2] The Law Firm was not even named as a party in Counts III and IV.

5

Johnson, 960 F.2d 396, 399 (4th Cir. 1992). We will address the challenged claims in the order in which they appear in the complaint.

III.

Under the current Bankruptcy Code, a bankruptcy trustee has "extensive power to avoid certain pre-petition transactions which adversely affect the bankruptcy estate." In re Virginia-Carolina Fin. Corp., 954 F.2d 193, 196 (4th Cir. 1992) (citing 11 U.S.C. §§ 544-551, 553 (1988)). We have characterized a bankruptcy trustee's power to avoid a pre-petition transfer meeting the requirements of Bankruptcy Code § 547(b) as one of "the more important of these voidable transfer[ ]" powers. Id. In general, Bankruptcy Code § 547(b) gives a bankruptcy trustee the power to avoid "a transfer made within a limited time prior to the filing of a bankruptcy petition that enables a creditor to receive more than the creditor would otherwise receive if, instead, the creditor were limited to his or her share of a distribution resulting from a Chapter 7 liquidation." Id. Specifically, Bankruptcy Code § 547(b) provides:

> . . . the trustee may avoid any transfer of an interest of the debtor in property --
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made --
>
>  (A) on or within 90 days before the date of the filing of the petition; or
>
>  (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if --

  (A) the case were a case under Chapter 7 of this title;

  (B) the transfer had not been made; and

  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Bankruptcy Code § 547(g) places the burden of proving the avoidability of a transfer under Bankruptcy Code § 547(b) on the trustee. See 11 U.S.C. § 547(g).

In Count I, the Trustee sought to avoid and recover from the Defendants the Debtors' transfers of the Deeds of Trust on their residence under Bankruptcy Code § 547(b). In defending against liability on Count I before the bankruptcy court, the Defendants primarily challenged the Trustee's ability to satisfy subsection (b)(5) of Bankruptcy Code § 547. According to the Defendants, subsection (b)(5) was not satisfied, because they did not receive more as a result of the transfers than if they had waited for liquidation and distribution of the assets of the bankruptcy estate. The bankruptcy court agreed with the Defendants, concluding that although sufficient equity in the residence existed to support the Deeds of Trust at the time of their transfer, subsection (b)(5) was not satisfied because the Defendants received no more as a result of the transfers than they would have received as creditors against the bankruptcy estate had the transfers not occurred.

On appeal to the district court, the Trustee contended that reversal was in order because the Defendants received value at the time of the transfers regardless of whether the Deeds of Trust had value at the time of liquidation and distribution. The district court agreed and reversed, stating that "the [D]efendants received $75,000 in value as of then regardless of what might have come later." (J.A. 124).

7

We agree with the Defendants and the bankruptcy court that the Trustee's proof failed to satisfy subsection (b)(5) of Bankruptcy Code § 547. As we recently stated in Hagar v. Gibson, 109 F.3d 201 (4th Cir. 1997), Bankruptcy Code § 547(b)(5) protects creditors in receipt of a pre-petition transfer "who can establish that they received no more by the payment than they would have received as claimants in a Chapter 7 liquidation." Id. at 210. This effect, we said, "simply carries out `the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off vis-a-vis the other creditors of the bankruptcy estate than he or she would have been had the creditor waited for liquidation and distribution of the assets of the estate.'" Id. (quoting In re Virginia-Carolina Fin. Corp., 954 F.2d at 199).

Here, the undisputed evidence establishes that the Defendants are no better off vis-a-vis the other creditors of the Debtors' estate than they would have been had they not received the transfers of the Deeds of Trust and waited for liquidation and distribution of the assets of the Debtors' estate. First, the undisputed evidence establishes that the Deeds of Trust only served to secure payment of certain debt. Thus, the Deeds of Trust cannot be characterized as payment of debt, as the Trustee's position seems to suggest. Second, the Deeds of Trust were never used to satisfy any of the debt. Third and finally, just months after the Debtors filed their Chapter 7 petition and prior to liquidation and distribution of their assets, the undisputed evidence establishes that the Deeds of Trust were completely and permanently worthless; thus, they could not be used to improve the Defendants' position among the creditors of the Debtors' bankruptcy estate. See 11 U.S.C. § 506(a) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim."). For these reasons, we reverse the district court's ruling on this claim.**3**

_____
**3** In a late attempt to bolster his position, the Trustee contended at oral argument that Bankruptcy Code § 550(a) dictates that under Bankruptcy Code § 547(b) he was entitled to recover an amount equal to the amount

IV.

Next, Rogers challenges the district court's <u>sua sponte</u> assessment of liability against him on Count II. According to Rogers, the district court erred in assessing liability against him on Count II, because the Trustee did not appeal the bankruptcy court's entry of judgment in his favor on that count. We agree with Rogers. Because the Trustee did not appeal the bankruptcy court's adverse ruling on that count, the issue of whether the bankruptcy court erred in making the ruling was not before the district court. Accordingly, we reverse the district court's assessment of liability on Count II against Rogers.

V.

The Law Firm next challenges the district court's affirmance of the bankruptcy court's entry of judgment in favor of the Trustee on Count II. Count II alleged in relevant part that under Bankruptcy Code § 548(a) the Debtors' transfer of the $50,000 Deed of Trust was avoidable and recoverable as a fraudulent transfer, because it occurred within one year before the filing of the bankruptcy petition, the Debtors received less than a reasonably equivalent value in exchange for the transfer, and the Debtors were insolvent at the time of the transfer.

Bankruptcy Code § 548(a) provides, in relevant part:

> [a] trustee may avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily-- . . .

_____

of equity that supported the Deeds of Trust at the times of their respective transfers. The Trustee's contention is readily rejected, because Bankruptcy Code § 550, entitled "Liability of transferee of avoided transfer," does not apply until a transfer has been determined to be avoidable. <u>See</u> 11 U.S.C. § 550(a) (providing that "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the bankruptcy estate, the property transferred, or, if the court so orders, the value of such property").

9

(1) made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made . . . , indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer . . .; and

(B)(i) was insolvent on the date that such transfer was made. . . .

11 U.S.C. § 548(a). This is the fraudulent transfer provision of the Bankruptcy Code. It allows the trustee to avoid the transfer of a bankruptcy debtor's property made within the year preceding the filing of the debtor's bankruptcy petition that depletes the assets of the debtor's bankruptcy estate. "The statute recognizes as fraudulent those transfers made with actual intent to hinder, delay or defraud creditors, as well as those that are deemed to be constructively fraudulent, because they are made for less than reasonably equivalent value, when the debtor is, or is rendered, insolvent, undercapitalized, or unable to pay its debts as they become due." 5 Collier On Bankruptcy ¶ 548.01[1] (15th ed. 1997). There are two main differences between Bankruptcy Code §§ 547(b) and 548(a). First, Bankruptcy Code § 547(b) requires that the transfer sought to be avoided have been made to or for the benefit of a creditor for or on account of an antecedent debt. See 11 U.S.C. § 547(b)(1) & (2). In contrast, Bankruptcy Code § 548(a) has no such requirement. Second, Bankruptcy Code § 548(a) requires an element of fraud or constructive fraud, see 11 U.S.C. § 548(a)(1) & (2), where, in contrast, Bankruptcy Code § 547(b) does not.

Because the Law Firm does not contest that the Debtors were insolvent during the one year prior to the bankruptcy and that the Debtors transferred the $50,000 Deed of Trust within the year preceding the filing of the petition, the issue is whether reasonably equivalent value was given in exchange for the transfer. As previously stated, the $50,000 Deed of Trust was intended to secure a $50,000 antecedent debt for legal representation. After reviewing the evidence in the record on this issue, we cannot say the district court's finding that the

10

Debtors received less than reasonably equivalent value in exchange for the transfer is clearly erroneous.

The Law Firm also contends that if the transfer is avoidable under Bankruptcy Code § 548(a), the Trustee should only be allowed to recover the $50,000 Deed of Trust itself, rather than its value at the time of the transfer. We agree. Once a transfer has been determined to be avoidable under Bankruptcy Code § 548, Bankruptcy Code § 550(a) provides that to the extent the transfer is avoided, "the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property . . . ." 11 U.S.C. § 550(a). Significantly, Bankruptcy Code § 550 does not state at what time this value is to be determined or under what circumstances the court should order recovery of the value rather than the property itself. We agree with the Bankruptcy Court for the Western District of North Carolina, however, that the language of Bankruptcy Code § 550(a) evidences "a congressional intent to return the property transferred unless to do so would be inequitable." In re Morris Communications NC, Inc., 75 B.R. 619, 629 (Bankr. W.D.N.C. 1987), rev'd on other grounds, 914 F.2d 458 (4th Cir. 1990).

Here, it would not be inequitable to only allow the return of the $50,000 Deed of Trust, rather than its value at the time of the transfer. Indeed, to allow the Trustee to recover the value at the time of transfer would mean a windfall to the bankruptcy estate. The record is undisputed that the Law Firm never invoked its rights under the $50,000 Deed of Trust to any equity in the Debtors' residence. In other words, the Law Firm was never enriched by the $50,000 Deed of Trust. Rather, it merely held a contingent interest in the equity of the residence from which it never benefited. Furthermore, if the transfer had never occurred, the creditors of the Debtors' bankruptcy estate would be no worse off because the $50,000 Deed of Trust became permanently valueless prior to liquidation and distribution through no fault of the Law Firm. In short, awarding the Trustee $50,000 on this count unjustly enriches the bankruptcy estate. Such unjust enrichment cuts against the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off vis-a-vis the other creditors of the bankruptcy estate than it would have been had the creditor waited for liquidation and distribution of the assets of the estate. Accordingly, we affirm the avoida-

11

bility of the Debtors' transfer of the $50,000 Deed of Trust, but reverse the district court's affirmance of the bankruptcy court's award of $50,000 in favor of the Trustee on this count and order that the Trustee's recovery is limited to the $50,000 Deed of Trust itself.

VI.

We next turn to the Law Firm's challenge to the district court's sua sponte assessment of liability against it on Counts III and IV involving the parcels of land located in Ocala, Florida. This challenge need not detain us long, because the Trustee has conceded that the district court erred in assessing liability against the Law Firm on Counts III and IV. Indeed, the Law Firm was not even named in Counts III and IV. We, accordingly, reverse the district court's assessment of liability against the Law Firm on Counts III and IV.

VII.

We next consider Rogers' challenge to the district court's affirmance of the bankruptcy court's entry of judgment in favor of the Trustee on Count III. In Count III, the Trustee sought to avoid the Debtors' transfers of three parcels of land located in Ocala, Florida as preferential transfers under Bankruptcy Code § 547(b). The Trustee alleged that the transfers were avoidable as preferential transfers because they were made for the benefit of a creditor; they were made on account of an antecedent debt owed by the Debtors before such transfer; they were made while the Debtors were insolvent between ninety days and one year before the date of the filing of the bankruptcy petition; they were made to a creditor who was an "insider" at the time of the transfers; and they enabled the creditor to receive more than he would have received as a creditor in bankruptcy. After sifting through the evidence, making credibility determinations, and making findings of fact, the bankruptcy court entered judgment in favor of the Trustee in the amount of $115,000. The $115,000 represented the combined value of the three parcels of land at issue.

Rogers first argues that judgment against him cannot be sustained because the bankruptcy court's finding under subsection (b)(4) of Bankruptcy Code § 547 that he was an "insider" at the time of the transfers is clearly erroneous. Rogers further argues that the bank-

12

ruptcy court's finding under subsection (b)(4) that a particular one of the three parcels was transferred between ninety days and one year before the Debtors filed their petition is clearly erroneous. Finally, Rogers argues that the bankruptcy court's finding that the transfers were on account of an antecedent debt was clearly erroneous. We address each of these arguments in turn.

A.

The bankruptcy court found that Rogers was an "insider" within the meaning of subsection (b)(4)(B) of Bankruptcy Code§ 547. Bankruptcy Code § 101(31) provides the following non-exhaustive list of the individuals who are "insiders" for purposes of the Bankruptcy Code, see Butler v. David Shaw, Inc., 72 F.3d 437, 443 (4th Cir. 1996):

> (i) relative of the debtor or of a general partner of the debtor;
>
> (ii) partnership in which the debtor is a general partner;
>
> (iii) general partner of the debtor; or
>
> (iv) a corporation of which the debtor is a director, officer or person in control.

11 U.S.C. § 101(31)(A).

The fact that Rogers does not fall into any of these categories is of no moment because, as just stated, this is a non-exhaustive list. Indeed, "`an insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny.'" Butler v. David Shaw, Inc., 72 F.3d 437, 443 (4th Cir. 1996) (quoting Hunter v. Babcock, 70 B.R. 662, 666 (Bankr. N.D. Ohio 1986)). Accordingly, insider status is determined by a factual inquiry into the debtor's relationship with the alleged insider. See, e.g., Browning Interests v. Allison, 955 F.2d 1008, 1011 (5th Cir. 1992).

13

The evidence in this case fully supports the bankruptcy court's finding that Rogers was an insider with respect to Broumas. In other words, the evidence establishes that Rogers and Broumas had a sufficiently close relationship to subject it to careful scrutiny. At various times over a period of fifteen years Rogers and Broumas have been creditor and debtor, principal and agent, joint venturers, attorney and client, landlord and tenant, and close friends. Furthermore, Broumas and Rogers made numerous loans to each other not evidenced by written promises to pay and pledged each other's credit. Additionally, Rogers permitted Broumas to make withdrawals from Rogers' and the Law Firm's bank account as if it were his own by giving him signature authority; the two were involved in investment deals without written agreements; Rogers agreed to represent Broumas in litigation without a written fee agreement; and the two made numerous purchases of bank stock in furtherance of the wash-trade scheme. In light of this evidence, we cannot say that the bankruptcy court's finding that Rogers was an insider is clearly erroneous.

B.

We now consider Rogers' argument that the bankruptcy court's finding under subsection (b)(4) that a particular one of the three parcels was transferred between ninety days and one year before the Debtors filed their petition is clearly erroneous. The parcel at issue was not owned by Broumas, but was subject to a first mortgage in his favor. At some point prior to September 1990, the United States Marshal for the Middle District of Florida seized this parcel for reasons not apparent from the record. On September 14, 1990, the Marshal conveyed the property to Rogers by quitclaim deed. The quitclaim deed stated that Rogers held a purchase money mortgage in the parcel that had been assigned to him by Broumas.

Rogers argues that although the quitclaim deed evidences Broumas' assignment of the mortgage to Rogers, the bankruptcy court's finding that the assignment occurred within one year of the filing of the petition is clearly erroneous, because the quitclaim deed did not specify when the assignment occurred. We reject Rogers' argument, because the record contains sufficient evidence to support the bankruptcy court's finding. Ironically, the sufficient evidence comes from Rogers himself:

14

Q. I believe your testimony was yesterday that you spent a week to ten days negotiating with the government regarding the issuance of this quit claim deed. Do you recall that testimony?

A. I recall testifying about it, yes.

Q. And would you advise the court what was the nature of these negotiations that required a week to ten days of your time.

A. I had to first find the entity who was in a position to execute a deed at all and then I had to find the person who had authority to order that the execution be done. Then I had to explain the circumstances of--the financial circumstances of the property because the government was trying to sell the property at auction and ultimately I was able to persuade the appropriate persons that if they sold the property the price that they got for it would be less than the mortgage <u>which was still owed on the property and which was held in Mr. Broumas' name and that therefore they should quit claim the deed rather than to go through this sale process and dealing with the government I found this to be an extraordinarily time-consuming effort</u>.

(J.A. 569-70). A reasonable interpretation of this testimony is that the mortgage was still held in Broumas' name in early September 1990 when he commenced negotiations with the Marshal in order to obtain a quitclaim deed with respect to this third parcel, which was within one year of the filing of the petition. Therefore, we reject Rogers' argument that the bankruptcy court's finding that he transferred the parcel between ninety days and one year of the filing of the petition is clearly erroneous.**4**

_____

**4** This is also one of the basis on which Rogers challenges the district court's affirmance of the bankruptcy court's decision in favor of the Trustee with respect to Count IV, which alleged that the transfers of the parcels located in Ocala, Florida constituted fraudulent transfers under

15

C.

As for the antecedent debt requirement under Bankruptcy Code § 547(b)(2), the record supports the bankruptcy court's finding on this issue. Specifically, the record contains a letter dated December 3, 1990, from Rogers to Broumas informing him that he sold all three parcels located in Ocala, Florida for $115,000. In this letter Rogers writes that "the potential profit which I may realize is . . . less than one-half of the net sales price and less than the sum previously transferred by me to you." (J.A. 683) (emphasis added). The bankruptcy court relied on this letter in finding that the Debtors had transferred the Ocala, Florida parcels on account of an antecedent debt. We cannot say that its finding is clearly erroneous.

Having rejected all of Rogers' arguments with respect to Count III, we affirm the district court's affirmance of the bankruptcy court's assessment of liability against Rogers on Count III.

VIII.

Finally, we address the Trustee's cross-appeal of the district court's affirmance of the bankruptcy court's decision in favor of the Defendants with respect to Count VI. In Count VI, the Trustee sought to recover approximately $98,000 from the Defendants, which the Trustee alleged was transferred to the Defendants during the wash-trade scheme. The record reflects that Broumas used a number of accounts, including accounts of the Defendants, to orchestrate his

_____

Bankruptcy Code § 548(a). Because the evidence supports the bankruptcy court's finding that the Debtors' interest in the mortgage on the third parcel was transferred to Rogers within one year of the filing of the petition, we reject Rogers' challenge. We also note that Rogers has admitted that he gave no consideration for the assignment, thus establishing under subsection (a)(2)(A) of Bankruptcy Code§ 548 that the Debtors received less than a reasonably equivalent value in exchange for the transfer. Because Rogers does not contest the remaining element of a fraudulent transfer under Bankruptcy Code § 548(a)--that the Debtors were insolvent at the time of transfer--we, accordingly, affirm the district court's decision with respect to Count IV.

16

wash-trade scheme in which he rapidly purchased and sold stock without any beneficial change in stock ownership. According to the Trustee, these transfers were avoidable and recoverable under Bankruptcy Code § 548(a). The Trustee specifically challenges the bankruptcy court's decision that he did not establish under subsection (a)(2)(A) of Bankruptcy Code § 548 that the Debtors received less than a reasonably equivalent value in exchange for the transfers. We reject the Trustee's challenge, because the record simply contains no evidence establishing that the Debtors' bankruptcy estate was diminished by the transfers.

IX.

In conclusion, we: (1) reverse the district court with respect to its reversal of the bankruptcy court's entry of judgment in favor of Rogers and the Law Firm on Count I; (2) reverse the district court with respect to its reversal of the bankruptcy court's entry of judgment in favor of Rogers on Count II; (3) affirm the district court with respect to its affirmance of the bankruptcy court's entry of judgment against the Law Firm on Count II as it pertains to liability under Bankruptcy Code § 548(a), but reverse as it pertains to the award of $50,000 and order the Trustee instead to recover the $50,000 Deed of Trust itself; (4) reverse the district court's entry of judgment against the Law Firm on Counts III and IV; (5) affirm the district court's affirmance of the bankruptcy court's entry of judgment against Rogers on Counts III and IV; and (6) affirm the district court's affirmance of the bankruptcy court's entry of judgment in favor of Rogers and the Law Firm on Count VI.

AFFIRMED IN PART AND REVERSED IN PART

17