### In re PUBLIC ACCESS TECHNOLOGY.COM, INC., Debtor.

### F. Perry Smith, Appellant,

### v.

### David R. Ruby, Trustee for Public Access Technology.Com, Inc., Appellee.

### No. 4:03cv159.

United States District Court, E.D. Virginia, Newport News Division.

April 6, 2004.

Beril M. Abraham, Virginia Beach, VA, Counsel for Appellant.

John Lyons Marshall, Jr., McSweeney & Crump, PC, Richmond, VA, Counsel for Appellee.

### OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the court on the appeal of F. Perry Smith ("Smith"), pursuant to 28 U.S.C. § 158(a), from an order of the United States Bankruptcy Court for the Eastern District of Virginia granting summary judgment in favor of the trustee for the debtor, Public Access Technology.com, Inc. By order filed October 1, 2003, the bankruptcy court found that the undisputed material facts demonstrated that Smith had received preferential transfers as an insider of the debtor, and ordered judgment in favor of the trustee in the amount of $360,000. Two issues are presented by his appeal. First, does a title, standing alone, make one an officer of a corporation, and thereby an "insider," for purposes of 11 U.S.C. § 547? Second, does a bankruptcy court err in permitting a trustee to proceed with a preference avoidance action after the defendant has filed a "Notice of Intention to Make a Proposal" in a Canadian bankruptcy court? For the reasons set forth below, the decision of the bankruptcy court is **AFFIRMED** in part, **REVERSED** in part, and **REMANDED** for further proceedings in accordance with this Opinion and Order.

### I. Factual and Procedural History

The debtor, Public Access Technology.com, Inc., is a Florida corporation with its principal place of business in Newport News, Virginia. (Joint Stipulations ¶ 12.)[1] Prior to petitioning for bankruptcy, the debtor sold and distributed computers, developed and exploited Internet technology, and manufactured, sold, and distributed self-standing computer and Internet kiosk systems. (Joint Stipulations ¶ 8.) Smith had developed and obtained a patent ("the Smith Patent") for a restricted access computer system for use in Internet transactions. (*Id.* ¶ 13.) On July 29, 1999, the debtor, Smith, and several companies

---

1. The material facts underlying this appeal were stipulated by the parties in their Amended and Restated Joint Stipulations.

owned or controlled by Smith consummated certain transactions. (*Id.* ¶ 10.) As aspects of these transactions, a Smith-owned company merged into the debtor, Smith became employed by the debtor as both Executive Vice President and a director, and Smith assigned the Smith Patent to the debtor. (*Id.* ¶ 14.)

Smith served the debtor as both Executive Vice President and a director through August 30, 2000. (*Id.* ¶ 11.) As a director, Smith participated in the management affairs of the debtor. (*Id.* ¶ 10.) On August 31, 2000, Smith ceased serving as a director of the debtor. (*Id.* ¶ 11.) Although Smith continued to serve as Executive Vice President, his duties and authorities were limited to research and development of technology, and he did not participate in the management affairs of the debtor. (*Id.*)

In compensation for the Smith Patent, the debtor paid Smith $60,000 in cash at the time of closing, and delivered a promissory note in the amount of $520,000. (*Id.* ¶ 20.) Smith received payments on the promissory note in installments of $30,000. (*Id.* ¶ 24.) From February 15, 2000, through August 31, 2000, a period in which Smith served as both Executive Vice President and a director, Smith received installment payments totaling $180,000. (*Id.* ¶ 24.) From September 1, 2000, through February 15, 2001, a period in which Smith continued to serve as Executive Vice President, but ceased to serve as a director, Smith received $180,000 in installments, $90,000 of which Smith received in the last ninety days of the period. (*Id.*)

On February 15, 2001, the debtor filed a voluntary petition under Chapter 7 of the United State Bankruptcy Code. (*Id.* ¶ 1.) A Chapter 7 trustee was appointed in the debtor's case. (*Id.* ¶ 2.) On February 14, 2003, the trustee initiated a preference avoidance action against Smith, seeking to recover $360,000 paid from the debtor to Smith during the one-year period prior to the petition date, February 15, 2001. Smith filed a response on April 11, 2003.

On September 17, 2003, the trustee filed a motion for summary judgment on the preference avoidance action. Smith responded on September 25, 2003, and the trustee replied on September 26, 2003. Also on September 26, 2003, Smith, a Canadian citizen, filed a "Notice of Intention to Make a Proposal" in bankruptcy court in Yellowknife, in the Northwest Territories ("the Canadian Bankruptcy Court"), pursuant to Canada's Bankruptcy and Insolvency Act. (Tr. at 2.)

On September 29, 2003, the bankruptcy court heard the arguments of counsel on the motion for summary judgment. By Memorandum Opinion and Order filed October 1, 2003, the bankruptcy court found that the undisputed material facts demonstrated that in the one-year period prior to the filing of debtor's petition, Smith had received preferential transfers in the amount of $360,000. (Mem. Op. & Order at 6–8.) The bankruptcy court further stated that

> [n]either counsel for the trustee nor counsel for the defendant could conclusively state that there was any injunction existing in the Canadian courts of the Northwest Territories that prohibited this Court from proceeding with the trustee's Motion for Summary Judgment.... Therefore, this Court exercised its discretion and has considered the issues before it on summary judgment.

(*Id.* at 7.)

Accordingly, the bankruptcy court awarded judgment against Smith in the amount of $360,000. (*Id.* at 8.) Smith filed a Notice of Appeal on October 7, 2003, claiming that the bankruptcy court erred

in determining that Smith was an insider of the debtor subsequent to August 31, 2000; and the bankruptcy court erred in permitting the trustee to proceed with the preference avoidance action after Smith had filed his "Notice of Intention to Make a Proposal" in the Canadian Bankruptcy Court. Smith filed his brief on January 7, 2004,[2] the trustee responded on January 27, 2004, and Smith replied on February 12, 2004. The matter is now ripe for review.

## II. Analysis

### A. Smith's Insider Status Subsequent to August 31, 2000

■ A debtor may ordinarily prefer one or more of its creditors, so long as the transfer or payment is to pay or secure a legitimate debt and violates no statute. 5 *Collier on Bankruptcy* ¶ 547, at 547–7 to 547–8 (Alan N. Resnick & Henry J. Somer eds., 15th ed. rev.2003). Section 547(b) of the Bankruptcy Code, however, permits a trustee to avoid certain prebankruptcy transfers as "preferences." *Id.* at 547–8. For a transfer to be preferential, it must "diminish the fund to which other creditors can legally resort for the payment of their debts, thus making it impossible for other creditors of the same class to obtain as great a percentage as the favored one." *Id.* at 547–24.

The trustee may avoid any preferential transfer by the debtor "made (A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider." 11 U.S.C. § 547(b)(4). Section 101(31)(B) of the Bankruptcy Code defines "insider" as follows:

(B) if the debtor is a corporation—

  (i) director of the debtor;

  (ii) officer of the debtor;

  (iii) person in control of the debtor;

  (iv) partnership in which the debtor is a general partner;

  (v) general partner of the debtor; or

  (vi) relative of a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B).

■ The bankruptcy court determined that because Smith "was either a director or an officer of the debtor during the one-year period prior to filing, . . . [Smith] was an insider under § 547." (Mem. Op. & Order at 7.) On this basis, the bankruptcy court granted summary judgment. On appeal, Smith does not dispute that he received preferential transfers, but instead argues that he was not an insider during the entire relevant period, and that the amount awarded by the bankruptcy court is therefore overstated by $90,000. A district court reviews *de novo* a bankruptcy court's grant of summary judgment. *Hager v. Gibson,* 109 F.3d 201, 207 (4th Cir. 1997).

First, Smith concedes that he was an insider of the debtor during the period in which he was a director and participated in the debtor's management affairs. (Br. of Appellant at 6.) Thus, there is no dispute that the $180,000 in preferential transfers received by Smith in the period from February 15, 2000, through August 30, 2000, was properly determined to be avoidable by the bankruptcy court. Additionally, any preferential transfers made to Smith in the ninety days prior to the filing of debtor's bankruptcy petition are avoidable,

---

**2.** By Order dated January 7, 2004, this court granted Smith's motion filed December 2, 2003, to extend the time to file a brief.

regardless whether Smith was or was not an insider. 11 U.S.C. § 547(b)(4)(A). The debtor's petition was filed on February 15, 2001. Thus, there is no dispute that the $90,000 received by Smith in the period from November 17, 2000, through February 15, 2001, was also properly determined to be avoidable.

■ Accordingly, the only period in issue is August 31, 2000, through November 16, 2000. During this period, Smith served the debtor only as Executive Vice President, and not as a director. Smith's duties and authorities during this period were limited to research and development of technology, and he did not participate in the management affairs of the debtor. Smith received $90,000 in preferential transfers during this period.

Smith argues that these stipulated facts demonstrate that he was not an insider during the period in dispute. In the alternative, Smith argues that the stipulated facts were insufficient to determine whether he was an insider, and that an evidentiary hearing should have been held to decide the issue.

In deciding this issue, the bankruptcy court relied on the analysis of *Magers v. Bonds (In re Bonds Distrib. Co.)*, 2000 WL 33673768, 2000 Bankr.LEXIS 1964 (Bankr.M.D.N.C.2000). *Bonds* held that a court need not examine the control exercised by a defendant to a preference avoidance action when the defendant falls within one of the categories of *per se* insiders enumerated in 11 U.S.C. § 101(31)(B). Because the defendant in *Bonds* was a director of the debtor, the court found that he was an insider, despite that he "did not 'act' like a director." *Id.*, 2000 WL 33673768 at *3, 2000 Bankr.LEXIS 1964 at *9. *Bonds* concluded that the plain meaning of the statute dictated that "any person that is a director of a corporate debtor ... is automatically considered to be an insid-

er." *Id.*, 2000 WL 33673768, at *4, 2000 Bankr.LEXIS 1964 at *11 (quoting *In re Babcock Dairy Co.*, 70 B.R. 657, 660 (Bankr.N.D.Ohio 1986)).

Similarly, here the bankruptcy court held that "Smith admits that he was the debtor's Executive Vice President, and we do not have to carry the inquiry any further." (Mem. Op. & Order at 6.)

> Since the defendant remained an officer of the debtor for more than twelve months prior to the time of the filing of the bankruptcy petition, he falls within the statutory definition of insider under § 101(31)(B) and we do not need to look to the issue of whether he had any control of the affairs of the debtor.

(*Id.*) Based upon this ruling, the bankruptcy court found that Smith "is an insider and must return to the trustee all $360,000 he received in the twelve months immediately prior to the filing." (*Id.*)

■ The Bankruptcy Code defines an "insider" to be, among others, a director of the debtor, an officer of the debtor, *or* a person in control of the debtor. 11 U.S.C. § 101(31)(B)(i)-(iii). It is unnecessary for a court to determine whether an individual is both a director and a person in control, or both an officer and a person in control, as the statutory definition is clearly stated in the disjunctive. A defendant's status as a director or an officer is alone sufficient to establish that he is an insider. In this regard, the court agrees with both the bankruptcy court and the court in *Bonds*. To hold otherwise would not only do violence to the plain meaning of the statute, but would also unnecessarily complicate a straightforward factual inquiry in contradiction of the Supreme Court's "clear preference for bright-line rules" in bankruptcy law. *Butler v. David Shaw, Inc.*, 72 F.3d 437, 442 (4th Cir.1996).

■ Here, however, Smith stipulated only that he held the title of Executive Vice President, not that he was an officer or director of the debtor.[3] This stipulation, without more, is not sufficient to find that Smith was an "officer" within the meaning of 11 U.S.C. § 101(31)(B). *See generally NMI Sys. v. Pillard (In re NMI Sys.)*, 179 B.R. 357, 370 (Bankr. D.D.C.1995) ("[A] mere title of 'vice president' is insufficient to make an individual an officer."); *Black's Law Dictionary* 1113 (Bryan A. Garner ed., 7th ed.1999) (defining "officer" as "a person elected or appointed by the board of directors to manage the daily operations of a corporation, such as a CEO, president, secretary, or treasurer"). There are no affidavits, articles of incorporation, corporate minutes, resolutions, or any documents or evidence that show this title makes Smith an officer of the corporation.[4] As such, whether Smith was an officer of the debtor during the relevant period, and thereby an "insider" under 11 U.S.C. § 547, remains a material fact in dispute, and summary judgment on this point was erroneous. Accordingly, the court **REVERSES** the grant of summary judgment with regard to the $90,000 in transfers received by Smith in the period from August 31, 2000, through November 16, 2000, and **REMANDS** for a factual determination of

Smith's officer status during this period by evidentiary hearing and/or appropriate, authenticated submissions by the parties.[5]

## B. Effect of the Canadian "Notice of Intention to Make a Proposal"

■■ Smith argues that, in light of his having filed a "Notice of Intention to Make a Proposal" in the Canadian Bankruptcy Court, the bankruptcy court erred in declining to stay the preference avoidance proceedings. A bankruptcy court's decision that comity does not require yielding to a foreign proceeding is reviewed on appeal for abuse of discretion. *Hobson v. Travelstead (In re Travelstead)*, 227 B.R. 638, 656 (D.Md.1998). Because comity is an affirmative defense, Smith bears the burden of proving that comity should have been extended. *See id.*

■ At the summary judgment hearing, Smith's counsel stated the following on this issue:

> Now, Your Honor, I do not think that either Canadian law or the Canadian Courts are presumptuous enough to think that they can affect any action which this Honorable Court may take in this matter.
>
> We do, however, respectfully suggest . . . that since Mr. Ruby's claim is against a Canadian citizen who resides

---

3. Indeed, Smith specifically denied that he was an officer, stating that his title of Executive Vice President was "empty" and "mere window dressing." (Resp. in Opp. to Mot. for Summ. J. at 2.)

4. The Bankruptcy Code itself does not define the term "officer." As such, this court finds no basis for proclaiming a rigid rule to determine who qualifies as a corporate officer. Beyond observing that proof of officer status requires more than just a title, and less than actual control of the corporate debtor, this court does not seek to constrain whatever inquiry the practical experience of the bankruptcy court may lead it to conduct.

5. It is not the intent of this court to unnecessarily burden the bankruptcy court by requiring evidentiary hearings or factual findings in cases in which they will serve no purpose. In many situations, such as the facts of *Bonds*, the parties may stipulate that the defendant was a director or officer. Where this occurs, there is no need for the court to look beyond the parties' agreement. Where, however, the defendant's status as a director or officer is disputed, some inquiry beyond the defendant's title will ordinarily be required.

in Canada, that we would ask this Court to defer any further proceedings in this matter until Mr. Ruby has gone to Canada and does what needs to be done there.

(Tr. at 2–3.)

In response, the trustee asserted that, regardless of Smith's status in any Canadian bankruptcy proceeding, whether preferential transfers from the debtor to Smith are avoidable was an issue for this bankruptcy court to decide. Although an active Canadian bankruptcy proceeding would require the trustee to seek enforcement of a preference action judgment through the Canadian Bankruptcy Court, the trustee argued that this bankruptcy court would determine the amount of that judgment "under any and all circumstances." (*Id.* at 3–4.)

From the bench, the bankruptcy court expressed a view consistent with the representations of the parties: "I'm inclined to go forward. The claim needs to be liquidated one way or another for both courts, and it's my intention, with the understanding and agreement of [Smith's counsel] that I do have the authority, to go forward." (*Id.* at 7.)

Smith argues on appeal that because he "is a citizen and resident of Canada, and substantially all of his assets are in Canada ... the disposition of those assets should be determined by a Canadian court." (Br. of Appellant at 11.) However, he does not explain how the determination of this preference avoidance action by the bankruptcy court will impede the Canadian Bankruptcy Court's disposition of Smith's assets.[6] When this preference avoidance action is resolved, the trustee will still be obligated to seek enforcement of his claim before the

Canadian Bankruptcy Court. The decision here merely determines the amount of that claim based on United States bankruptcy preference law. In so doing, the bankruptcy court here assists, rather than impedes, the Canadian Bankruptcy Court in deciding the ultimate disposition of Smith's assets.

In reviewing the record, it is clear that the bankruptcy court acted cautiously and respectfully in handling a foreign notice of unclear import. The bankruptcy court solicited the understanding of the parties and took action consistent with their representations. Moreover, there has been no showing that the determination of the preference avoidance action in the bankruptcy court here is likely to impede in any way the disposition of any pending Canadian bankruptcy. Accordingly, the court finds that the bankruptcy court did not abuse its discretion, and **AFFIRMS** the decision to hear and decide the motion for summary judgment.

### *III. Conclusion*

For the reasons stated above, the bankruptcy court's grant of summary judgment in favor of the trustee for the debtor is **AFFIRMED** in all respects except with regard to the $90,000 in transfers received by Smith in the period from August 31, 2000, through November 16, 2000. On this point, the judgment is **REVERSED,** and the case is **REMANDED** for further proceedings in accordance with this Opinion. The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to the parties and to the bankruptcy court.

**IT IS SO ORDERED.**

---

**6.** Although Smith argues that "the preference issues may end up being relitigated" before the Canadian Bankruptcy Court, he offers no

factual or legal support for this speculative claim. (Br. of Appellant at 12.)