In re **EL COMANDANTE MANAGE-MENT COMPANY, LLC, et al.,** Debtor(s).

**Wigberto Lugo–Mender, Plaintiff**

v.

**Equus Entertainment Corporation, James Wislon, Defendant.**

Civil No. 07–1818 (JAG).

United States District Court, D. Puerto Rico.

March 19, 2008.

**471**

David P. Freedman, Luis C. Marini–Biaggi, Hermann D. Bauer–Alvarez, Ubaldo M. Fernandez–Barrera, O'Neill & Borges, San Juan, PR, for Plaintiff.

Peter W. Miller, Stuart A. Weinstein–Bacal, Weinstein–Bacal & Associates, PSC, Old San Juan, PR, for Defendant.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Equus Entertainment Corporation ("Equus") and James Wilson's ("Wilson") (collectively "Defendants") Motion to Dismiss. (Docket No. 5). For the reasons set forth below, the Court **DENIES** Defendants' Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 2007, Wigberto–Lugo–Mender ("Plaintiff") in his capacity as Litigation Trustee of the El Commandante Racetrack Litigation Trust Agreement and Declaration of Trust filed a complaint before the U.S. Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court") to avoid and recover preferential and/or fraudulent transfers. The complaint was brought under 11 U.S.C. §§ 544, 547, 548, and 550, and under the laws of the Commonwealth of Puerto Rico. Plaintiff avers that Defendants knew or should have known that Debtors were insolvent or in the vicinity of becoming insolvent and, therefore, unable to satisfy their obligations as they became due. Plaintiff contends that Defendants, despite having knowledge of the economic situation of Debtors, still executed a pattern of fraud in prejudice of the Debtors' creditors. According to Plaintiff, Defendants caused the Debtors to pay debts owed solely by Equus and not by the Debtors.

Plaintiff alleges that between October 15, 2000 and October 15, 2004 one or more of the Debtors in the Chapter 11 proceeding before the Bankruptcy Court[1] made certain transfers of property or interest in their property to Defendant Equus.[2] Those transfers were allegedly then passed on to several insiders of the Debtors. Wilson is singled out by Plaintiff as being one of the alleged insiders. Plaintiff contends that Wilson is an insider because he was either Director of the Debtors, officer of the Debtors or a person in control of the Debtors.(Docket No. 13, Exh. 1).

1. On October 15, 2004, each of the Debtors filed a voluntary chapter 11 petition before the Bankruptcy Court. On January 3, 2007, the Bankruptcy Court confirmed the Plan. On January 4, 2007, the "Effective Date" under the plan occurred. Pursuant to the confirmed Plan and the Confirmed Order, Plaintiff was appointed Litigation Trustee of the Litigation Trust. The confirmed Plan and the Confirmation Order transferred all of the Debtors' causes of action including the avoidance actions under 11 U.S.C. §§ 544, 545, 547, 548, 549, and 553(b). (Docket No. 13, Exh. 1).

2. Plaintiff's allegations are supported by several exhibits.

On September 6, 2007, Defendants filed a Motion to Withdraw Reference, (Docket No. 1), which was granted by this Court. (Docket No. 12). On September 12, 2007, Defendants filed a Motion to Dismiss. (Docket No. 5). Plaintiff did not oppose Defendants' motion.

## STANDARD OF REVIEW

### A. *Motion to Dismiss Standard*

In *Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007)(quoting *Twombly,* 127 S.Ct. at 1967). While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." *Twombly,* 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible

for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (*quoting Correa–Martinez,* 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

## Discussion

Defendants argue that Plaintiff's complaint should be dismissed because his allegations that: 1) Wilson was an insider and 2) that the aforementioned transfers were avoidable preferential transfers pursuant to 11 U.S.C. § 547 fail to satisfy Federal Rule of Civil Procedure 8(a). Furthermore, Defendants aver that Plaintiff's fraudulent transfer allegations under 11 U.S.C. § 548 fail to satisfy Federal Rule of Civil Procedure 9(b). We will first address Defendants' Rule 9(b) allegation.

### 1. *Federal Rule of Civil Procedure 9(b)*

It is well settled law that Rule 9(b) applies to section 548 claims. *OHC Liquidation Trust v. Nucor Corp.,* 325 B.R. 696, 698 (Bankr.D.Del.2005). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b); *see also United States v. Dow Chem. Co.,* 343 F.3d 325, 328 (5th Cir.2003); *In re Circle Y,* 354 B.R. 349, 356 (Bankr.D.Del. 2006)("To plead fraud, the Trustee cannot merely recite the statutory elements."). The purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged."[3] *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984); *ASARCO LLC v. Ams.*

---

**3.** In *United States ex rel. Harrison v. Westinghouse Savannah River Co.,* 352 F.3d 908, 921 (4th Cir.2003), the Circuit Court explained

that Rule 9(b) has four purposes: 1) it ensures that the defendant has sufficient information to formulate a defense by putting it on notice

*Mining Corp.,* 382 B.R. 49 (S.D.Tex.2007); *In re APF Co.,* 308 B.R. 183, 188 (Bankr.D.Del.2004)(describing the standard as higher and more strict than notice pleading).

Allegations of date, place and time certainly fulfills the heightened pleading requirement, however, nothing in the rule requires them. *Seville Industrial Machinery Corp.,* 742 F.2d at 791. "Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* Nonetheless, the particularity requirement of Rule 9(b) is satisfied [i]f the fraudulent transfer claim details the transfers alleged to be fraudulent, the reasons the transfers are fraudulent, and the roles of the defendants in the transfers. *GE Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1078 (7th Cir.1997)(internal citations and quotations omitted); *In James River Coal Co.,* 360 B.R. 139, 162 (Bankr.D.Va.2007).

In the case at bar, the complaint provides exact dates, precise dollar amounts, and the check numbers for each of the transfers. The complaint also explains who received the transfers and the relationship between the parties. Consequently, we find that Rule 9(b) has been satisfied. Defendants have adequate notice of the precise misconduct with which they are charged.

2. *Federal Rule of Civil Procedure 8(a)*

a. *Preferential Transfers and Rule 8(a)*

In order to comply with Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim that gave Defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Calvi v. Knox County,* 470 F.3d 422, 430 (1st Cir.2006)(internal citations omitted); *In re NM Holdings Co., LLC,* 376 B.R. 194, 204 (Bankr.D.Mich.2007)(citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also* Fed.R.Civ.P. 8(a). The liberal pleading standard of Rule 8(a) only requires Plaintiffs seeking to recover preferential transfers under 11 U.S.C. § 547 to proffer allegations that identify: 1) the name of each debtor/transferor; 2) the name of each defendant/transferee; 3) the form of transfers (checks); and 4) the total amount of the alleged preferential transfers made by a particular debtor/transferor to each defendant/transferee. *In re NM Holdings Co., LLC,* 376 B.R. at 204.

As mentioned previously, the complaint provides exact dates, precise dollar amounts, and the check numbers for each of the transfers. Furthermore, the complaint details who received the transfers. The complaint also explains the relationship between the parties.[4] As such, Plaintiff provided ample and fair notice to each of the Defendants of what are his claims and the grounds upon which they rest. Therefore, this Court finds that Plaintiff preferential transfer allegations under section 547 complied with the requirements imposed by Rule 8(a).

b. *Insider*

To be considered an insider "the person must exercise sufficient authority over the corporate debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *In re Babcock Dairy Co. of Ohio, Inc.,* 70 B.R.

---

of the conduct complained of 2) it protects defendants from frivolous suits; 3) it eliminates fraud actions in which all the facts are learned after discovery; and 4) Rule 9(b) protects defendants from harm to their goodwill and reputation.

4. *In re Oakwood Homes Corp.,* 340 B.R. 510, 522 (Bankr.D.Del.2006)

657, 661 (Bankr.N.D.Ohio 1986). "If the debtor is a corporation, then a controlling person, a relative of a controlling person, a partnership in which the debtor is a general partner, and a general partner of the debtor are all insiders." *In re Badger Freightways, Inc.,* 106 B.R. 971, 980–981 (Bankr.D.Ill.1989)(internal citations omitted). There is a *per* se rule that corporate officers and directors are insiders because they have the ability to influence corporate decision making. *Id.* at 982(citing 11 U.S.C. § 101(30)(B)(i), (ii)). Allegations of an undefined "close relationship" are insufficient to demonstrate the requisite level of operating control. *Id.* at 982–983. However, allegations that a person is a corporate director, officer, or person in control of the debtor is sufficient to plead that the person is an insider. *See* 11 U.S.C. § 101(25)(B)(i), (ii), (iii);[5] *see also id.* at 981–983; *In re Cohn Precious Metals, Inc.,* 1983 Bankr.LEXIS 6623 (Bankr. D.Conn.1983).

In his complaint, Plaintiff stressed that Wilson was an insider because he was either Director of the Debtors, officer of the Debtors or a person in control of the Debtors. This Court finds that this allegation satisfies the liberal pleading requirement of Rule 8(a).

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendant's Motion to Dismiss. (Docket No. 5).

IT IS SO ORDERED.

**In re Yvette McKENZIE–GILYARD aka Yvette Gilyard aka Yvette McKenzie, Debtor.**

**Yvette McKenzie–Gilyard, Plaintiff,**

**v.**

**HSBC Bank Nevada, N.A., Defendant.**

**Bankruptcy No. 1–05–14317–ess. Adversary No. 06–01343–ess.**

United States Bankruptcy Court, E.D. New York.

Dec. 11, 2007.

---

5. 11 U.S.C. § 101(31) provides in pertinent part "insider" includes—
(B) if the debtor is a corporation—
(i) director of the debtor;
(ii) officer of the debtor;
(iii) person in control of the debtor;
(iv) partnership in which the debtor is a general partner;
(v) general partner of the debtor; or
(vi) relative of a general partner, director, officer, or person in control of the debtor

■■■■■■■■■

———

Preston L. Zarlock, Esq, Angela Z. Miller, Esq., Anthony M. DiPaolo, Esq., Phillips Lytle LLP, Buffalo, NY, for HSBC Bank Nevada, N.A.

Jay S. Fleischman, Esq., Fleischman-Law, P.C., Brooklyn, NY, for Yvette McKenzie–Gilyard.

## MEMORANDUM DECISION DENYING HSBC BANK NEVADA, N.A.'S MOTION FOR SUMMARY JUDGMENT

ELIZABETH S. STONG, Bankruptcy Judge.

Before the Court is the motion of the Defendant, HSBC Bank Nevada, N.A. ("HSBC"), for summary judgment on all of the claims asserted by the Plaintiff, Yvette McKenzie–Gilyard (the "Plaintiff"), in this Adversary Proceeding, dated December 7, 2006 (the "Motion for Summary Judgment"). HSBC brings this Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. HSBC argues that all of the Plaintiff's claims fail as a matter of law, and in addition, that this Court does not have subject matter jurisdiction over certain of those claims.

After consideration of the submissions, the arguments of counsel, and the record before the Court, and for the reasons set forth below, the Motion for Summary Judgment is denied with respect to the Plaintiff's claims for violation of the discharge injunction.

## JURISDICTION

This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(F). The following constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rule 7052.

## BACKGROUND

### A. Procedural History

On June 26, 2006, the Plaintiff filed a Complaint (the "Complaint") against HSBC for violation and contempt of the discharge injunction under Section 524(a)(2) of Title 11 of the United States Code (the "Bankruptcy Code"); for violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. (the "FCRA"); and for defamation. Docket No. 1. The Plaintiff seeks injunctive relief, actual, statutory, and punitive damages, and attorney's fees and costs.

On July 28, 2006, HSBC filed its Answer (the "Answer"). Docket No. 3. On January 8, 2007, the Court entered a Stipulation and Scheduling Order setting April 13, 2007, as the date by which the parties must complete discovery. Docket No. 12.

On December 8, 2006, HSBC filed its Motion for Summary Judgment and supporting declarations seeking the entry of judgment in its favor on all of the claims asserted by the Plaintiff. Docket No. 8. HSBC also filed a Memorandum of Law (the "Mem. in Support") in support of the Motion for Summary Judgment. Docket No. 9.

On February 2, 2007, the Plaintiff filed an Affidavit of Jay S. Fleischman in opposition to the Motion for Summary Judgment (the "Aff. in Opp."). Docket No. 13. On February 13, 2007, HSBC filed a Reply to the Affidavit in Opposition (the "Reply

to Aff."). Docket No. 15. On March 5, 2007, the Plaintiff filed a Supplemental Affirmation in Opposition and Sur–Reply (the "Supp. Affirm. in Opp."). Docket No. 16. On April 2, 2007, the Plaintiff filed under seal a further opposition to the Motion for Summary Judgment (the "Opp. to Summary Judgment"). Docket No. 20. On April 30, 2007, HSBC filed under seal a Reply to Plaintiffs Sur–Reply and Supplemental Affirmation and Opposition to HSBC Motion for Summary Judgment (the "Reply to Supp. Affirm. and Opp."). Docket No. 22.

On May 8, 2007, the Court held a hearing on the Motion for Summary Judgment at which counsel for the Plaintiff and counsel for HSBC appeared and were heard (the "May 8 Hearing"). Docket Entry dated May 8, 2007. At this hearing, the Plaintiff stated that she was voluntarily withdrawing her claims for relief for violations of the FCRA and for defamation in this Adversary Proceeding. May 8 Hearing Tr. at 4:18–20. On May 25, 2007, HSBC filed a Supplemental Memorandum of Law in support of the Motion (the "Supp. Mem. in Support"). Docket No. 24. A continued hearing on the motion was held on August 15, 2007, and the matter was submitted for decision. Docket Entry dated August 15, 2007.

## B. *The Debtor's Account with HSBC*

The record shows that Household Bank (SB), N.A., a predecessor of HSBC, issued a Seaman's Furniture Company, Inc. ("Seaman's") credit card to the Debtor (Complaint ¶ 7; Answer ¶ 6) and Household Retail Services, a predecessor of an HSBC affiliate, was listed as a creditor by the Plaintiff in her Chapter 7 bankruptcy. Bankruptcy Case No. 05–14317, Docket No. 1, Schedule F. According to HSBC, the Plaintiff obtained the Seaman's credit card and established a credit account (the "Account") on February 18, 2002. Motion for Summary Judgment, Declaration of Angela Miller ("Miller Decl.") ¶ 3(a), Exh. A (Debtor's February 2, 2002 application for a Seaman's credit card).

HSBC states that, on October 15, 2004 (the "Sale Date"), HSBC sold the Account to Arrow Financial Services LLC ("Arrow"). Miller Decl. ¶¶ 3(b), 3(c), Exhs. B (HSBC billing inquiry screen evidencing HSBC's sale of the Account to Arrow) and C (Account Summary of HSBC's sale of 9,979 accounts to Arrow). According to HSBC, as of the Sale Date, the balance on the Account was $4,866.81. Miller Decl. ¶ 3(b), Exh. B (HSBC CMS billing inquiry screen evidencing HSBC's sale of the Account to Arrow). HSBC states that on October 30, 2004, HSBC advised the Plaintiff by letter that the Account had been sold to Arrow and that all payments and inquiries concerning the Account should be directed to Arrow. Miller Decl. ¶ 3(k), Exh. K (Letter from HSBC to Debtor dated October 30, 2004). HSBC further asserts that the Plaintiff's Account was one of some 9,979 accounts sold by HSBC to Arrow on the Sale Date. Miller Decl. ¶ 3(c), Exh. C (Documentation of HSBC's sale of 9,979 accounts to Arrow).

The Plaintiff acknowledges that HSBC sold the Account to Arrow (Opp. to Summary Judgment ¶ 22) but denies that she received HSBC's letter, or any letter, "regarding the alleged sale of [her] account to Arrow," and also states that she "never received a letter from Arrow ... claiming to own the account." Aff. in Opp. ¶ 10, Exh. 1 (Affidavit of Plaintiff). The record indicates that HSBC did not repurchase the account from Arrow, and the Plaintiff did not enter into a reaffirmation agreement with HSBC during her Chapter 7 bankruptcy case. Motion for Summary Judgment, Declaration of Brian Cutler ("Cutler Decl.") ¶ 4; Complaint ¶ 15.

HSBC sold the Account pursuant to an Account Purchase and Sale Flow Agreement, dated May 15, 2002, entered into by a predecessor of HSBC and Arrow (the "Forward Flow Agreement" or "FFA"). Aff. in Opp. ¶ 15; Reply to Supp. Affirm. and Opp. at 8. The Forward Flow Agreement provides for HSBC to request that the tradeline for each account be updated to indicate that the account has been transferred and/or sold. FFA ¶ 7.3 cited in Opp. to Summary Judgment ¶ 18. In addition, the Forward Flow Agreement provides for HSBC to receive a fee of five percent of the payments received by Arrow on the transferred accounts more than four months after they are transferred. FFA ¶ 6 cited in Opp. to Summary Judgment ¶ 19.

On March 28, 2005 (the "Petition Date"), some five months after HSBC sold the Account to Arrow, the Plaintiff filed for bankruptcy protection under Chapter 7 of the Bankruptcy Code. Bankruptcy Case No. 05–14317, Docket No. 1. On August 17, 2005, the Plaintiff received a discharge. Bankruptcy Case No. 05–14317, Docket No. 8. The Certificate of Mailing with Order of Discharge, dated August 19, 2005, states that Household Retail Services, a predecessor of an HSBC affiliate, received notice of the Plaintiff's discharge. Bankruptcy Case No. 05–14317, Docket No. 9. HSBC denies that it received notice of the Plaintiff's discharge. Answer ¶ 8. The Plaintiff's Chapter 7 bankruptcy case was closed on May 3, 2006. Bankruptcy Case No. 05–14317, Docket Entry dated May 3, 2006.

The Plaintiff asserts that on April 28, 2006, she requested that Experian, Equifax, and TransUnion "reinvestigate all tradelines of all creditors listed on her bankruptcy proceeding, including the tradeline of [HSBC]." Complaint ¶ 16, Exh. 1 (Plaintiff's request to Equifax for reinvestigation of tradelines). The Plaintiff's Equifax credit report, dated May 15, 2006, shows that the Account tradeline was updated to accurately reflect an activity description of "Transfer/Sold" and a blank "Balance Amount." Opp. to Summary Judgment, Exh. B (Equifax Credit Report dated May 15, 2006).

The Plaintiff alleges that her TransUnion credit report, dated May 4, 2006, states that the Account was closed by HSBC, and that the balance of approximately $4,867, was charged off as bad debt. Complaint ¶ 18, Exh. 2 (TransUnion Credit Report dated May 4, 2006). The TransUnion credit report also shows that the Account tradeline was last updated by HSBC in October 2004, some five months before the Petition Date. *Id.*

HSBC states that it last reported on the status of the Account in October 2004. Miller Decl. ¶ 3(g), Exh. G (Letter from Angela Z. Miller to Jay S. Fieischman dated August 14, 2006). HSBC also states that it never received a notice of dispute from TransUnion. Motion for Summary Judgment, Declaration of Daniel E. Thiemann ("Thiemann Decl.") ¶ 3.

On May 23, 2006, the Plaintiff filed a motion to reopen her Chapter 7 bankruptcy case for the purpose of commencing this Adversary Proceeding. Bankruptcy Case No. 05–14317, Docket No. 28. The Court granted that motion by order entered on June 8, 2006. Bankruptcy Case No. 05–14317, Docket No. 31. On June 26, 2006, the Plaintiff commenced this action. Bankruptcy Case No. 05–14317, Docket No. 32. *See* Docket No. 1.

During discovery, the Plaintiff requested information from HSBC about any circumstances where HSBC was found to have violated an automatic stay or a discharge injunction as well as circumstances where such claims were settled. Aff. in Opp., Interrogatory No. 1. HSBC objected to

these requests. *Id.* The Plaintiff also requested information from HSBC on its system for terminating the collection process and correcting its reporting with a credit reporting agency. Aff. in Opp., Interrogatory No. 15. HSBC also objected to these requests. *Id.* The Plaintiff requested information on problems that HSBC encountered with identifying accounts as discharged. Aff. in Opp., Interrogatory No. 17. Again, HSBC objected to these requests. *Id.*

The Plaintiff seeks actual, statutory, and punitive damages, and attorney fees and costs from HSBC for violation of the Section 524 discharge injunction. Complaint ¶ 86. The Plaintiff alleges that she has suffered and continues to suffer "adverse action, credit denials, embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages." Complaint ¶ 25. She also alleges that her ability to obtain credit is limited and that she faces higher costs in future consumer transactions and may be denied loans for which she would otherwise qualify. Complaint ¶ 83; *See* Complaint ¶¶ 24, 84; May 8 Hearing Tr. at 41:11–14.

As noted above, the Plaintiff has determined voluntarily to withdraw her claims for relief under the Fair Credit Reporting Act, and for defamation in this Adversary Proceeding. May 8 Hearing Tr. at 4:18–20.

## DISCUSSION

### A. *The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings by Bankruptcy Rule 7056, provides that summary judgment is appropriate when " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A fact is material only if it affects the result of the proceeding and a fact is in dispute only when the opposing party submits evidence such that a trial would be required to resolve the differences." *Hassett v. Altai, Inc. (In re CIS Corp.),* 214 B.R. 108, 118 (Bankr.S.D.N.Y.1997).

The moving party has the burden of demonstrating the absence of any genuine issue of material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the Court in the light most favorable to the party opposing the motion. *See Anderson,* 477 U.S. at 249, 256, 106 S.Ct. 2505; *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 743 (2d Cir. 2003). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of fact for trial and summary judgment is appropriate. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348. *See McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006).

### B. *The Plaintiff's FCRA and Defamation Claims*

HSBC seeks summary judgment on the Plaintiff's FCRA and defamation claims on

grounds, among others, that this Court does not have subject matter jurisdiction over these claims, and that even if this Court does have subject matter jurisdiction, there is no genuine issue as to any material fact and HSBC is entitled to judgment as a matter of law.

As noted above, the Plaintiff has determined voluntarily to withdraw her claims for relief under the FCRA and for defamation in this Adversary Proceeding. May 8 Hearing Tr. at 4:18–20. As a result, it is not necessary for the Court further to consider HSBC's motion with respect to these claims.

C. *The Plaintiff's Claims for Violation and Contempt of the Discharge Injunction*

HSBC seeks summary judgment on the Plaintiffs claims that it violated the discharge injunction under Section 524(a)(2) of the Bankruptcy Code. HSBC bases this argument on two principal grounds. First, HSBC argues that its failure to update its report on the status of the Plaintiff's Account to TransUnion following her bankruptcy discharge is not an act to collect on a discharged debt in violation of Section 524(a)(2). Mem. in Support at 8. HSBC argues that willfulness is required for this Court to find an action for contempt in violation of Section 524(a)(2) and asserts that the Plaintiff has not presented sufficient evidence to create a genuine issue of fact for trial on the question of whether its failure to update the report was willful. Mem. in Support at 6.

Second, HSBC argues that the Plaintiff must show that she suffered damages in order to state a claim for a violation of the discharge injunction, and urges that the Plaintiff has not presented sufficient evidence to create a genuine issue of fact for trial on the question of whether she suffered damages. Mem. in Support at 8.

*Establishing a Violation of the Discharge Injunction of Section 524(a)(2)*

■ Section 524 of the Bankruptcy Code provides:

(a) A discharge in a case under this title . . .

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

11 U.S.C. § 524(a)(2). One of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start." *See Marrama v. Citizens Bank,* —— U.S. ——, ——, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (U.S. 2007) ("The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.' ") (citation omitted). The Section 524 discharge injunction serves this function by protecting debtors from creditors' attempts to collect discharged debts after bankruptcy.[1]

1. The legislative history of Section 524(a)(2) confirms the statute's goal of providing a fresh start for debtors who receive a discharge:

Subsection (a) [of 11 U.S.C. § 524] . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, including telephone calls, letters, and person-
al contacts to collect[,] recover or offset any discharged debt as a personal liability of the debtor, or from property of the debtor, whether or not the debtor has waived discharge of the debt involved. The injunction is to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This paragraph

■ In order to succeed on a Section 524 claim, a plaintiff bears the burden of linking a creditor's behavior with a violation of the Section 524 discharge injunction. *See Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 490 (Bankr.S.D.N.Y.2007); *Puller v. Credit Collections USA, Inc. (In re Puller)*, 2007 WL 1811209 at *6 (Bankr.N.D.W.Va.2007); *Mahoney v. Washington Mutual Card Servs. (In re Mahoney)*, 368 B.R. 579, 584 (Bankr.W.D.Tex.2007) ("On Defendant's summary judgment motion, Plaintiff bears the burden of producing summary judgment evidence sufficient to raise an issue of material fact that connects Defendant's credit reporting with collection activity.").

■ Section 524 of the Bankruptcy Code does not define an "act to collect ... any debt" and as a result, courts and commentators have concluded that it provides a "broad injunction" against a wide range of collection activities. COLLIER ON BANKRUPTCY ¶ 524.02[2] (15th ed. rev.2007). As one commentator has noted, "[i]n enforcing the injunction, courts have encountered a wide variety of methods used by creditors to attempt to collect discharged debts." *Id.; see also* COLLIER ON BANKRUPTCY ¶ 524.02[2][b] (surveying cases identifying acts that violate the discharge injunction).

The legislative history of Section 524(a)(2) similarly supports a broad interpretation of an "act to collect ... any debt" that violates the Section 524 discharge injunction. *See In re Torres*, 367 B.R. at 484–85 ("The statute's plain terms obviate consideration of its legislative history ... but it is worth noting that the

legislative history ... also supports a broad reading of the injunction contained in section 524(a)(2) ....") (citations omitted).

■ A plaintiff may bring a claim for a violation of the discharge injunction in the form of an action for a sanction for civil contempt. *In re Torres*, 367 B.R. at 490 ("[M]onetary relief sought by the plaintiffs in connection with [an] alleged breach of section 524(a) of the Bankruptcy Code is properly viewed as a sanction for civil contempt."). *See In re Puller* 2007 WL 1811209 at *3 (citing cases) ("A violation of the discharge injunction is punished by contempt of court."); COLLIER ON BANKRUPTCY ¶ 524.02[2][c] ("Civil contempt is the normal sanction for violations of the discharge injunction.").

■ To succeed on this claim, a plaintiff must show that a violation occurred by "clear and convincing evidence." *In re Puller*, 2007 WL 1811209 at *3; *In re Torres*, 367 B.R. at 490. And as the court in *In re Puller* notes, "[d]etermining whether a party may be held liable for civil contempt is a two part inquiry: (1) did the party know of the lawful order of the court, and (2) did the defendant comply with it." *In re Puller*, 2007 WL 1811209 at *3 (citing cases).

Many courts have held that the failure of a furnisher of credit information to take affirmative steps to update the information that it has reported on a consumer's account is not, standing alone, a violation of Section 524(a)(2). For example, in *Bruno v. First USA Bank, N.A. (In re Bruno)*,

---

has been expanded over a comparable provision in Bankruptcy Act section 14f to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employees, harassment, threats of repossession and the like. The change ... is intended to insure that once a debt is discharged, the debtor will

not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that. H.R.REP. No. 95–595, at 365–66 (1977); S.REP. No. 95–989, at 80 (1978), U.S.Code Cong. & Admin.News 1978, p. 5963. *See Torres v. Chase Bank USA, N.A. (In re Torres)*, 367 B.R. 478, 485 (Bankr.S.D.N.Y.2007).